IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEDIBILL OF MARYLAND, INC.,      *
    et al., Plaintiffs

                      *   CIVIL NO. AMD-04-4015

    V.

                      *

ANESTHESIA BUSINESS CONSULTANTS,
    LLC, ET AL., Defendants     *

*   *   *   *   *   *   *   *   *   *   *   *   *

<u>MEMORANDUM OPINION</u>

By order dated September 9, 2005, the Honorable William D. Quarles, Jr. referred this case to the undersigned for the resolution of all discovery disputes. (Paper No. 48). Ruling on the motions was deferred pending mediation. Mediation efforts failed.

Plaintiffs Medibill of Maryland, Inc. ("Medibill") and Joetta Smith ("Smith"), filed this diversity suit against Defendant Joseph Locke ("Locke") and Defendant Anesthesia Business Consultants ("ABC") alleging defamation, invasion of privacy by false light, tortious interference with contract, tortious interference with prospective business relationship, violation of the Maryland Uniform Trade Secret Act, unfair or deceptive trade practices, fraud and misrepresentation, and negligent supervision (Paper No. 2). Since 1996, Medibill had provided medical billing services to Anesthesia Company, LLC ("ANCO"), a local anesthesia practice group. Beginning in April 2003, ANCO hired ABC to conduct an overview of ANCO's practice

and business management, including its medical billing service
provided by Medibill.  Plaintiffs allege that defendants
"unlawfully disparaged and defamed Medibill, Smith, and
Medibill's individual employees with the purpose and intent to
replace Medibill as ANCO's billing service provider.  (Id.)

There are four motions pending before the Court.

- Defendants' emergency motion to compel production of
  documents requested in the notice of taking of the
  deposition duces tecum of Ann Bryan.  (Paper No. 56).

- Defendants' motion for leave to serve additional
  document requests and compel the response to same.
  (Paper No. 46).

- Defendants' motion to compel plaintiff's answers to
  interrogatories and response to the first request for
  production of documents.  (Paper No. 31).

- Plaintiffs' motion to compel a further response to
  interrogatories and request for production of
  documents.  (Paper No. 24).

No hearing is necessary.  Local Rule 105.6.  The defendants'
first motion (Paper No. 56) is DENIED as moot as the parties
informed the Court that they had resolved the dispute and will
not be further discussed.  For the reasons discussed below,
defendants' motion for leave to serve additional document
requests and compel response to same (Paper No. 46) is DENIED,
defendants' motion to compel plaintiff's answers to
interrogatories and response to the first request for production
of documents (Paper No. 31) is DENIED in part and GRANTED in
part, and the plaintiffs' motion to compel a further response to

-2-

interrogatories and request for production of documents (Paper No. 24) is DENIED in part and GRANTED in part.

## I.  Analysis

The trial court has broad discretion to determine relevancy for discovery purposes.  See Watson v. Lowcountry Red Cross, 974 F.2d 482, 489 (4th Cir. 1992); Witten v. A.H. Smith & Co., 100 F.R.D. 446, 447 (D. Md. 1984); Survifor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005).

Rule 26 of the Federal Rules of Civil Procedure permits discovery of any non-privileged manner relevant to the claim or defense of any party, except on a showing of good cause "the court may order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1).  The burden is on the party resisting discovery to clarify and explain precisely why the documents sought are not relevant.  United Oil Co., Inc. v. Parts Associates, Inc., 227 F.R.D. 404, 411 (D. Md. 2005).

"The present standard -- 'relevant to the claim or defense of any party -is still a very broad one." United Oil Co., Inc. v. Parts Associates, Inc., 227 F.R.D. 404, 411 (D. Md. 2005) (quoting 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2008 (Supp. 2004)).  See also Thompson v. Department of Housing and Urban Development, 199 F.R.D. 168, 172 (D. Md. 2001) ("[C]ounsell should be forewarned against taking an

overly rigid view of the narrowed scope of discovery.  While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer. Such a restrictive approach would run counter to the underlying purpose of the rule changes, as explained by the commentary.").

"A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter, 211 F.R.D. 658, 663 (D. Kan. 2003).  Accord Minch v. City of Chicago, 213 F.R.D. 526, 527 (N.D. Ill. 2003) ("relevant material, for discovery purposes, may encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.").  In addition, "relevance for discovery purposes is viewed more liberally then relevance for evidentiary purposes." United Oil Co., Inc. v. Parts Associates, Inc., 227 F.R.D. 404, 411 (D. Md. 2005); Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 199 (N.D. W. Va. 2000).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Accord Survifor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005).

However, courts may limit any discovery method if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

FED. R. CIV. P. 26(b)(1).  "The limitations provide for a burden and expense analysis in order to determine whether the likely benefit of the discovery information would outweigh the expense of procuring it, taking into account the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake, and the potential for the discovery to resolve those issues."  <u>United States v. Duke Energy Corp.</u>, 214 F.R.D. 392, 393 (M.D.N.C. 2003).

## II.  Defendants' Motion for Leave to Serve Additional Document Requests and Compel Responses to Same.  (Paper No. 46).

On or about March 16, 2005, defendants served their First Request for Production of Documents on Plaintiff Medibill. (Paper No. 50 at 3).  On April 22, 2005, Medibill objected to Request Nos. 31-36 because they exceeded the number of requests permitted under Local Rule 104.1 and did not respond.  (<u>Id.</u>)  On June 24, 2005, defendants served an additional eighteen

separately numbered document requests upon Medibill.[1]  Defendants

---

[1] The following document requests are at issue:

Document Request No. 1: "All documents or electronic records of charges or billings submitted by Medibill on behalf of ANCO for the years 2002, 2003 and 2004, including, but not limited to, charge slips/tickets, patient demographics, operating room logs, OB logs, labor and delivery logs, claims, explanation of benefits, collection referrals, rejections, correspondence from payors, and collection activity logs, including system notes."

Document Request No. 2: "All reports, summaries, or electronic databases evidencing charges, cases, unites, payments, write-offs and adjustments for anesthesia services provided by ANCO in the years 2002, 2003, and 2004."

Document Request No. 3: "All documents, including monthly and annual reports, evidencing overpayments by any payor or patient of ANCO in 2002, 2003, or 2004."

Document Request No. 4: "All documents, including monthly or annual reports, evidencing credit balances for ANCO in 2002, 2003, and 2004."

Document Request No. 5: "All documents, including monthly and annual reports, evidencing referrals of ANCO billings to outside collections in 2002, 2003, and 2004."

Document Request No. 6: "All document, including monthly and annual reports, evidencing outstanding accounts receivables of ANCO for the years 2002, 2003, and 2004."

Document Request No. 7: "All documents, including monthly or annual reports, evidencing write-offs recorded or taken by Medibill for ANCO accounts in 2002, 2003, 2004, and 2005."

Document Request No. 8: "All managed care and payor contracts negotiated by Medibill for ANCO."

Document Request No. 9: "All procedure code (i.e. CPT and ASA relative value) dictionaries and diagnosis code (ICD9), dictionaries or indexes in existence at Medibill in 2002, 2003, and 2004."

Document Request No. 10: "All documents evidencing or referring to Medibill's ownership, leasehold, or other interest in 8 Willow Street, Annapolis, Maryland."

Document Request No. 11: "All patient and/or collection ledgers for all billings or collections performed by Medibill for ANCO in 2002, 2003, 2004, or 2005, including notes regarding payment, collection and rejection."

did not file a motion for leave to file greater than 30 requests nor any other motion at that time to join the issue for the Court.  The plaintiffs objected to the second request on July 27, 2004, because defendants exceeded the number of requests permitted under Local Rule 104.1.  Under the modified scheduling order, fact discovery in the case concluded on August 5, 2005. (Paper No. 26).  In the joint status report filed on August 5, 2005, defendants notified the Court that they intended to file a motion for leave to file additional document requests.  (Paper No. 41). On August 25, 2005, defendants filed the motion at issue, alleging the document requests were essential to respond to arguments raised by the plaintiffs.  (Paper No. 46). Specifically, defendants state the documents requested are

---

Document Request No. 12: "All documents provided to any person who may be called as an expert witness in this case."

Document Request No. 13: "All HIPAA Plans and Compliance Plans in existence at Medibill in 2002, 2003 and/or 2004."

Document Request No. 14: "All documents evidencing Medibill's compliance procedures, programs, or training."

Document Request No. 15: "All monthly and annual reports of charges and payments by payor for ANCO in the years 2002, 2003 and 2004."

Document Request No. 16: "All monthly and annual reports or summaries provided by Medibill to the members of ANCO in the years 2002, 2003, and 2004."

Document Request No. 17: "Medibill's general accounting ledgers for the years 1999-2004."

Document Request No. 18: "Any statements, ledgers or summaries of Medibill's revenues and expense for the years 1999-2004."

necessary to respond to allegations that if ABC had conducted a proper audit of ANCO's practice, Medibill's performance would have been seen to be favorable. (<u>Id.</u>)

Fact discovery ended almost a month before the defendants filed their motion. Allowing the requests to be filed following the end of fact discovery would in essence result in the modification of the scheduling order. The parties filed a joint motion of extension of time to complete discovery and modify scheduling order on July 1, 2005. (Paper No. 35). Judge Quarles denied the motion on July 6, 2005, leaving August 5 as the discovery cutoff. (Paper No. 36). As Judge Quarles denied the parties' second joint motion for further extension of the scheduling order on July 13, 2005, the undersigned discovery judge is reluctant to, in effect, grant additional discovery where the trial judge has denied across the board any further discovery period, without a compelling particularized showing, not presented to Judge Quarles.

The scheduling order "is the critical path chosen by the trial judge and the parties... in 'secur[ing] the just, speedy, and inexpensive determination of every action, and that the good cause procedural standard exists to ensure these goals were met, particularly in guaranteeing a set schedule and avoiding procrastination and delay." <u>Stewart v. Coyne Textile Services</u>, 212 F.R.D. 494, 496 (S.D. W.Va. 2003) (citing <u>Marcum v. Zimmer</u>,

163 F.R.D. 250, 253 (S.D. W.Va. 1995)).  A Court may modify the

schedule on a showing of good cause if the deadline cannot

reasonably be met despite the diligence of the party seeking the

extension.  Fed. R. Civ. P. 16(b).  When addressing whether good

cause exists, the primary issue is the diligence of the party

seeking the amendment.  Coleman v. Quaker Oats, 232 F.3d 1271,

1295 (9th Cir. 2000).  Compare United States v. 1948 South Martin

Luther King Drive, 270 F.3d 1102, 1110 (7th Cir. 2001) (no good

cause for delay in filing motion when no explanation offered for

waiting five months to offer challenge) with Stewart v. Coyne

Textile Services, 212 F.R.D. 494, 496 (S.D. W.Va. 2003) (finding

good cause where delay in filing motion was due to a plaintiff's

failure to timely respond to discovery requests).

Under Local Rule 104.1, "[u]nless otherwise ordered by the

Court or agreed upon by the parties, no party shall serve upon

any party, at one time or cumulatively, more than 30 requests for

production... including all parts and subparts."  Defendants

violated Local Rule 104.1 when they attempted to serve

cumulatively more than thirty document requests on Medibill on

June 24, 2005, and indeed when they served over 30 document

requests on Medibill in their First Request on March 16.

Defendants failed to offer any justification for this violation.[2]

---

[2] In their motion, defendants appear to blame the plaintiffs for
denying access to documents that will tend to prove or disprove key
facts in the case (Paper No. 53 at 3) or for waiting thirty days to

As such, it is difficult for the Court to conclude good cause exists for permitting additional discovery at this late stage.

Moreover, defendants failed to clearly articulate why the aforementioned document requests were not served prior to June 24, 2005.[3]  In their motion, defendants alleged that plaintiffs only began to reveal their theory "through the questioning of various witnesses." (Paper No. 46-1).  However, defendants failed to state when the questioning occurred or when defendants first became aware of plaintiffs' theory.[4]

Defendants appear to argue that their delay was the result of plaintiffs' inadequate responses to their request to "separately identify each alleged 'false and defamatory' statement made by ABC on November 6, 2003, regarding Medibill or Ms. Smith." (Paper No. 53 at 4).  In their response to the interrogatory, plaintiffs listed at least three pages worth of false and defamatory representations.  Defendants found the

---

object to their second request for interrogatories. (Paper No. 46-1 at 3 n.2).  However, plaintiffs are not obligated to answer document requests in this instance, regardless of their merits.  Moreover, plaintiffs' objection was timely filed under the Federal Rules of Civil Procedure.

[3] Plaintiffs suggest the requests were served following a settlement conference held on June 21, 2005.

[4] In their motion, defendants referenced depositions taken in July 2005, after the second document request was filed. (Paper No. 46-1 at 4).  However, in their reply, the defendants stated that "[o]bviously, Plaintiffs put the accuracy of the ABC Report and Presentation long before Locke and Lopez's deposition, prompting Defendants to issue their Second Request." (Paper No. 53 at 6).

response to be inadequate.  "As the interrogatory response in question shows, Plaintiffs merely excerpt certain materials they find onerous (and presumably, damaging to their case.) Plaintiffs neglect to mention how any of the statements allegedly defame Plaintiffs." (<u>Id.</u>) Defendants' argument is unpersuasive, as the interrogatory did not ask plaintiffs to explain its basis for finding the statements defamatory.  Even if the response was misleading, defendants were on notice from plaintiffs' complaint that the quality and scope of its investigation was at issue.  In their complaint, plaintiffs stated that defendants made the allegedly defamatory statements knowing they were false and defamatory, or with reckless disregard for the truth and accuracy of the statements.

In sum, the defendants have failed to demonstrate convincingly good cause for their failure to file the requests and/or file a motion for leave to file a greater number of requests timely within the parameters of the scheduling order.

However, despite their lack of diligence in pursuing the matter and without any legal support for their position, defendants insist that discovery should go forward as their case will be severely prejudiced without this information.

> A significant part of Plaintiffs' theory of the case is that Defendants' review of the business side of ANCO's practice was not up to 'audit standards' and if Defendants had conducted a full or proper 'audit', Plaintiff's performance would have been favorable... Without a review of these documents, Plaintiffs' theory

will go unchallenged and rob Defendants of a full
defense.

(Paper No. 53 at 2).  Plaintiffs respond that defendants have

mischaracterized their actual position, which is as follows:

> defendants knew or should have known that their
> statements were false; the methods used in conducting
> their assessment of Medibill did not and, and could
> not, support the conclusions that were presented; and
> they acted in complete disregard of the facts and or
> standards applicable to such engagement.

(Paper No. 50 at 8).

The complaint was clear that the plaintiffs were complaining

about their "false and defamatory statements about Medibill, its

performance, its capabilities and the quality and integrity of

its employees."  ¶ 23 of Complaint.

Of course, defendants are entitled to the materials provided

to plaintiffs' expert so as to be able to meet her testimony.

The defendants do not need to have access to all Medibill's

records to attempt to do a complete audit of the company as of

its review to defend the case.  The issue in the case is their

actions and statements based on what they did do and did know --

not what they could have done or could have known.  In

comparison, plaintiffs would be prejudiced if the motion was

granted, as they have already filed their expert report and

concluded their fact discovery.  If the Court granted defendants'

request for relief, at minimum, plaintiffs would have to be

granted opportunity to conduct discovery, including hiring an

expert, critique the defendants' audit and perhaps do their own.

In short, the defendants "slept on their rights" and did not timely pursue additional discovery within the Scheduling Order framework.  Moreover, the defendants have not demonstrated such a radical change in plaintiffs' theory or proof that severe prejudice would result in the absence of additional discovery. As a result, defendants' motion is denied.

**III.  Defendants' Motion to Compel Plaintiff's Answers to Interrogatories and Response to First Request for Production of Documents (Paper No. 31).**

On September 6, 2005, defendants filed a motion to compel plaintiffs' answers to interrogatories and response to the first request for production of documents.  (Paper No. 47).  Defendants seek to compel Plaintiff Smith to answer Interrogatory No. 1 and to produce documents responsive to Request No. 2.  Defendants also seek to compel Plaintiff Medibill to answer Interrogatory No. 1 and to produce documents responsive to Request Nos. 3, 4, 7, 10, 19 and 24.  (<u>Id.</u>)[5]  The Court will discuss each request in turn.

A.  <u>Interrogatory No. 1 to Plaintiff Smith</u>:

Interrogatory No. 1 seeks Ms. Smith's driver license number

---

[5] Without citing to any authority, plaintiffs assert the motion is untimely, because fact discovery had concluded.  However, defendants waived this argument by filing their own motion to compel discovery thirteen days later.

and Social Security number.[6]  Defendants argue that Smith has put

her entire employment, emotional and marital history at issue by

claiming economic and emotional injuries, and the information

requested will assist defendants with their investigation of Ms.

Smith's background, including her economic and emotional

injuries.  (Paper No. 31-1 at 13).  The discovery could also lead

to the discovery of additional information regarding plaintiff's

reputation, as her reputation was put at issue in the defamation

claim.  (Paper No. 38 at 7).  Plaintiffs object to the request as

it would facilitate an "investigation" designed only to further

intimidate and harass Ms. Smith.  (Id.)

Smith alleged in her complaint that defendants made

intentionally false and malicious statements about her, and as a

direct and proximate cause of the dissemination of those

statements, Smith experienced damages to her professional

standing and reputation.  (Paper No. 2 at 20).  The Court agrees

with defendants' general proposition that interrogatories seeking

certain personal information from the plaintiff may produce facts

bearing on plaintiff's reputation at the time of publication.

See Nichols v. Philadelphia Tribune Co., 22 F.R.D. 89, 91 (E.D.

Pa. 1958); Patton v. Southern Bell Tel. & Tel. Co., 38 F.R.D.

---

[6] Defendants also seek the identification of Smith's date of birth and names of former spouses.  In their response, plaintiffs stated that Ms. Smith's date of birth and names of former spouses were provided during deposition.  (Paper No. 52 at 2.)  As the parties have resolved this issue on their own, the issue is moot.

428, 430 (N.D. Ga. 1965).  However, not all such personal information is discoverable.

As discussed _infra_, the Court must balance the need for the information against the burden on the opposing party.  While a party's social security number and driver's license number are not privileged information, <u>Gober v. City of Leesburg</u>, 197 F.R.D. 519, 520-1 (M.D. Fla. 2000), in recognition of its highly sensitive nature, on occasion courts have blocked disclosure of the information.  <u>See</u>, <u>e.g.</u> <u>Kowalski v. Stewart</u>, 220 F.R.D. 599, 600 (D. Az. 2004) (withholding production of social security number of officer-defendant to inmate in 1983 action); <u>Scaife v. Boenne</u>, 191 F.R.D. 590, 592 (N.D. Ind. 2000) (police officers are not required to produce in false arrest case their address, social security number, or facts about their children).  In comparison, defendants failed to articulate a particular need for the information.  Instead, defendants painted a general need for documents concerning plaintiff's background and reputation. Without specific information about the type of information the defendants seeks to uncover or how the requested information would assist the investigation, the request appears harassing and not aimed at legitimate discovery goals.

B. <u>Request for Production No. 2 to Plaintiff Joetta Smith</u>:

Defendants seek Plaintiff Smith's federal tax returns for the years 1998 and 2004 and state and local tax returns for 1998

- 2004.  (Paper No. 31).  Ms. Smith has disclosed her federal tax returns for the years 1999-2003.  Having obtained an extension, she had not filed her income tax for the year 2004.  Defendants argue that Plaintiff Smith has put her income and earning capacity at issue by claiming economic and emotional damages in the suit. (Paper No. 38).

Even though tax returns are not privileged, there is a general public policy against permitting unnecessary disclosure of the forms.  In determining whether to permit disclosure of the income tax forms, the court must determine whether (1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information is not discoverable through another source.  <u>Terwilliger v. York Intern Corp.</u>, 176 F.R.D. 214, 216-7 (W.D. Va. 1997); <u>Eastern Auto. Distributors, Inc. v. Peugeot Motors of America, Inc.</u>, 96 F.R.D. 147, 148 (E.D. Va. 1982); <u>Hawkins v. South Plains Int'l Trucks, Inc.</u>, 139 F.R.D. 679, 681-2 (D.Colo. 1991); <u>Gattegno v. Pricewaterhousecoopers, LLP</u>, 205 F.R.D. 70, 73 (D. Conn. 2001). The party seeking discovery bears the burden of establishing the relevance of the documents.  <u>Terwilliger v. York Intern Corp.</u>, 176 F.R.D. 214, 217 (W.D. Va. 1997); <u>Eastern Auto. Distributors, Inc. v. Peugeot Motors of America, Inc.</u>, 96 F.R.D. 147, 148 (E.D. Va. 1982).  By alleging economic losses, Plaintiff Smith has placed her financial statements at issue. <u>Poulous v. Naas Food,</u>

Inc., 959 F.2d 69, 75 (7th Cir. 1992); Smith v. Bader, 83 F.R.D. 437, 439-40 (S.D.N.Y. 1979).[7]

The resisting party then must identify an alternative source for the information.  Eastern Auto. Distributors, Inc. v. Peugeot Motors of America, Inc., 96 F.R.D. 147, 148 (E.D. Va. 1982).  As defendants have sufficient information about Plaintiff Smith's income from 1999 - 2003 from her federal income tax forms, no compelling need exists for the disclosure of her state and local income tax forms from those years.  However, plaintiff has not identified an alternative source of information for her earnings in either 1998 or 2004.  Thus, Smith must disclose either her federal or state and local income tax returns for the years 1998 and 2004.

C. Request for Production from Plaintiff Medibill Nos. 7, 10, and 24

Defendants ask the Court to order plaintiff Medibill to identify by bates numbers documents produced in response to Request Nos. 7, 10 and 24.  (Paper No. 47 at 2-3).  As of July 15, 2005, defendants allege that plaintiff produced in excess of 5,000 documents not labeled nor identified as responsive to particular requests. (Paper No. 38 at 8).  In response, plaintiff asserts the requested bates numbers for Request No. 7 were

---

[7] Even though plaintiffs argue that defendants have refused to provide any of their tax returns, (Paper No. 52 at 2), this is an inappropriate reason for failing to respond to the request.  Mahoney v. Kempton, 142 F.R.D. 32, 33 (D. Mass. 1992).

provided to defendants following their conference, and that the identity of the documents are otherwise plain on their face. (Paper No. 52 at 2).  Plaintiff also alleged that it referenced the information produced pursuant to Request Nos. 10 and 24 in the expert report submitted on August 25, 2005.  (<u>Id.</u>)

Rule 34 of the Federal Rules of Civil Procedure states that the party producing documents "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."  FED. R. CIV. P. 34(b).  The rule does not permit defendants to "dump" documents on the plaintiffs.  <u>T.N. Taube Corp. v. Marine Midland Mortg. Corp</u>, 136 F.R.D. 449, 456 (W.D.N.C. 1991) (court doubted documents produced in an unorganized box were produced as kept in the ordinary course of business, and ordered defendants to organize them to correspond to the requests); <u>Stiller v. Arnold</u>, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (parties violated Rule 34 by producing 7000 pages of documents in no apparent order).  While neither party specifically described the manner in which the documents were produced, plaintiff never claimed the documents were produced in the ordinary course of business.  Accordingly, plaintiff Medibill must identify for defendants by bates number all documents responsive to Request Nos. 7, 10 and 24

separately.[8]

    D. <u>Interrogatory No. 1 to Plaintiff Medibill</u>

    Defendants seek Medibill's collection rates for 1999-2004
(total revenue/total amounts billed). (Paper No. 47 at 2). In
their response and partial opposition to defendants' motion,
plaintiff stated that "they have already provided collection
information for the relevant period and are amending their
interrogatory answer to provide the total charges during each
year." (Paper No. 34-2 at 5). On September 9, 2005, defendants
stated the information had not been produced, even though the
plaintiff agreed to do so. (Paper No. 47 at 2). In their
supplemental response, plaintiff stated that "[d]efendants have
the information necessary to perform their own calculation of the
'collection rate.' No additional information is required."
(Paper No. 52).

    Plaintiff Medibill appears to be arguing under Rule 33(d) of
the Federal Rules of Civil Procedure that in lieu of responding
to an interrogatory, business records were produced under which
the answer to the interrogatory may be derived, and the burden of
deriving the answer is substantially the same for both parties.
FED. R. CIV. P. 33(d). Defendants have not challenged plaintiff's

---

    [8] A dispute of fact exists over whether plaintiffs identified the
documents produced under the requests. Even if the Court were to
credit the plaintiffs argument, referencing the material in an expert
report or after a conference is not the appropriate method for
labeling documents under Rule 34(b).

assertion in response to motion to compel discovery (Paper No. 52), that Medibill has provided the information needed to do the "collection rate" calculation.  However, Rule 33(d) is only triggered if plaintiff does not have the requested collection rates.  If plaintiff does have the requested collection rates, Medibill must answer the interrogatory by January 5, 2006.  If Medibill does not and since defendants have not objected that the burden to compute the rate would be greater for defendants than the plaintiff, the plaintiff's provision of the underlying data meets its obligation.

    E. <u>Request for Production No. 3 to Medibill</u>

    Defendants ask the Court to compel Medibill to produce all Medibill financial statements for the fiscal years 1998 - 2004, including but not limited to, balance sheets, profit and loss statements, and earnings and statements.  (Paper No. 47 at 6). Defendants allege Medibill put at issue documents detailing its performance, sources of revenue, expenses, profitability and other business operations by claiming that Mr. Locke's opinions caused the demise of Medibill and millions of dollars in damages. (Paper No. 38 at 1).  Medibill replied that the document request is duplicative, burdensome and oppressive, because Medibill's tax returns from 1999 - 2003 provided information regarding the company's billing expenses (Paper 34-2 at 2).  Defendants state the tax returns are insufficient to permit an exploration of the

company's historical operations and profitability.  (Paper No. 38-2).

The Court agrees with defendants.  By alleging that defendants destroyed their business, plaintiffs' allegations extend beyond the question of total annual earnings.  Additional information is necessary for the defendants to determine how the loss of ANC's business affected the Medibill's finances. Consequently, the financial statements contain relevant information not located in the tax records and must be produced by January 5, 2006.

F. <u>Request for Production No. 4 to Medibill</u>

The request seeks the production of "all state and federal tax returns for Medibill for the years 1998-2004." (Paper 31-1 at 16).  Medibill has not produced federal tax returns from 1998 and 2004 or any relevant state tax forms.  Defendants allege the documents are necessary to assess plaintiff's claims of damages. (Paper No. 31-1 at 16).[9]  However, plaintiff responds that the request is duplicative, burdensome and oppressive, because the defendants also are seeking the production of financial statements. (Paper No. 34-2 at 2).

Even though Medibill has placed its finances at issue by alleging economic damages, the defendants failed to show a

---

[9] Medibill produced federal income tax returns from 1999 through 2003 (Paper No. 34-2 at 2).  The company received an extension on its filings for the year 2004.

compelling need for the information, as information about the company is also available from the company's financial records. Consequently, the Court denies defendants' motion to compel further response to the request.

      G. <u>Request for Production No. 19 to Medibill</u>

In Document Request No. 19, defendants requested "all documents which in any way communicate amounts owed to Medibill from clients or customers for service.. including but not limited to invoices, bills, collection notices, contracts and/or agreements" from the years 1998 and 2004.  (Paper No. 31-1 at 18).  The information is allegedly necessary to provide defendants with a reasonable foundation to examine the Medibill's economic health.  (Paper No. 31-1 at 18).  However, as plaintiffs allege, the request is duplicative of the information provided in the financial statements and tax forms produced.

### IV.   Plaintiffs' Motion to Compel a Further Response to Interrogatories and Request for Production of Documents (Paper No. 24)

On September 20, 2005, plaintiffs filed a motion to compel a further response to interrogatories and request for documents. Specifically, plaintiffs ask the Court to order Defendant ABC to produce documents and other items responsive to Requests Nos. 4, 7 and 8.  Plaintiffs also request Defendant Locke to produce documents responsive to Request No. 6 and to provide a response to Interrogatory No. 14.  In addition, plaintiffs ask the Court

to compel defendants to produce all electronic documents and communications.  The Court will address each request in turn.

A. <u>Production of All Electronic Communications and Documents</u>

In the motion, plaintiffs allege the defendants failed to produce clearly responsive documents to three discovery requests.[10]

First, plaintiffs requested the production of all electronic records and data compilations in connection with their request to ABC and Locke to "produce all documents and communications relating to the statements made relating to Medibill and Ms. Smith." (Paper 24 at 11).  Defendants have not produced communications or documents from the files or computer of ABC's President, Hamid Mirafzali (aka Tony Mira).  Yet, plaintiffs received from third parties copies of communications to Mr. Mirafzali which allegedly are responsive to the aforementioned request.  (<u>Id.</u> at Exhibit A, B, and C).  After reviewing the documents, the Court agrees with plaintiffs that the documents are responsive and should have been produced.

Plaintiffs also allege that defendants failed to be forthcoming in their response to Interrogatory No. 11.  (Paper No. 51 at 2).  Interrogatory No. 11 states:

---

[10] Plaintiffs hinted in their motion that defendants' response to other requests also may have been deficient.  Because plaintiffs failed to describe the discovery request at issue or the response to the request, the Court cannot evaluate the sufficiency of these requests.

> Identify all communications and agreements between
> Locke and ABC relating to his employment, his duties
> and responsibilities at ABC, and his compensation,
> including all documents and communications relating to
> his employment, duties responsibility or compensation.

In response to the request, defendants produced one employment agreement between Locke and ABC. Plaintiffs learned at a deposition that Locke and ABC had an earlier employment agreement. (Paper No. 51 at 2). Again, the earlier employment agreement appears to have been responsive to the request and should have been identified in the answer to the interrogatory.

In Request for Production No. 10, plaintiffs requested: "all documents and communications which reflect allegations and/or complaints of deceptive or unfair trade practices by ABC and/or its representatives between 2000 and the present." In their response, defendants stated no documents were responsive to the request. However, plaintiffs received from third parties various correspondence addressed to Mr. Mira alleging that Mr. Locke engaged in deceptive practices as an ABC employee. (Paper No. 51, Exhibit D). Review of the correspondence suggests the material was clearly responsive.

To the extent defendants have in their custody or control additional relevant responsive documents or communications in response to any of the aforementioned requests, these files should be produced. The failure of production of these various responsive documents raises a question about the thoroughness of

the defendants' review and search of their electronic records.
Accordingly, defendants shall file an affidavit detailing efforts
undertaken to locate all relevant responsive electronic
communications and documents, including any steps taken to
recover documents that were destroyed and explaining the failure
to produce responsive electronic communications that plaintiffs
identified as received from other sources, by January 5, 2006.

B. Request for Production No. 4

Document Request No. 4 seeks the production of "all
documents and communications that refer or relate to ANCO and/or
any of ANCO's individual members or employees." (Paper No. 24 at
6). After defendants objected to the request as overly broad,
Medibill agreed to limit the request as follows:

> copies of documents that (i) refer or relate to
> Medibill or Ms. Smith; (ii) discuss the relationship
> between ABC and ANCO or any of the ANCO physicians;
> (iii) discuss the overall performance of ABC as ANCO's
> consultant and billing service provider; (iv) contain
> or refer to monthly reports provided by ABC to ANCO or
> any ANCO physicians; and/or (v) discuss the amounts
> paid by ANCO to ABC.

(Paper No. 51 at 3). Defendants produced documents responding to
the request,[11] but intentionally withheld from production the

---

[11] Defendants produced the following documents: an ABC Report,
Proposal/Presentation, Locke's billable time chart, Summary of monthly
revenues collected by ABC on behalf of ANCO, Letter from Thomas Jones
to Lois Nolan dated January 26, 2004, request for proposal issued by
ANCO, letter of intent, service level agreement, billing &
reimbursement analysis, billing services agreement, consulting
agreement between ABC and ANCO, practice review and initial
observations, practice analysis questionnaire, collection rations,
ANCO General Statistics, financial analyses performed by ABC of ANCO

hundreds of documents ABC generated or received "on a daily basis that refer or relate to ANCO and its practice (e.g. charge slips and other documents needed to perform medical billing.)." (Paper No. 28-1 at 10). In justifying their refusal to do so, defendants alleged that the original document request was overly broad, without discussing the amended request. (<u>Id</u>.)[12]

While the original document request was overly broad, the amended request is not. The routine daily records to which the defendants objected are outside the amended request and, in any event, appear burdensome.

Defendants also raised specific objections to two sub-parts of the revised request. First, defendants allege that the request for documents "which contain or refer to monthly reports provided by ABC to ANCO or any other physician" - (iv) - is over broad and would result in the production of irrelevant documents, as ABC's performance under the contract has no relevance to the issues at hand. (Paper No. 28-1 at 11). Plaintiffs state that the objection is "disingenuous and misleading", as ABC falsely contended that Medibill failed to meet certain unspecified industry standards. In the absence of specified standards, ABC's

---

medical volumes and communications relating to complaints or praise of ABC's billing services by ANCO. (Paper No. 28-1 at 10).

[12] However, it is clear defendants were aware of the revised request, as the defendants argued in the same memorandum that two subparts of the revised request were irrelevant. (<u>Id.</u>)

performance is relevant to evaluate the objectivity of its review of Medibill. (Paper No. 30 at 8).

The relevance of the aforementioned documents depends on the claims before the Court. In their complaint, plaintiffs allege, <u>inter</u> <u>alia</u>, that defendants knowingly made inaccurate, disparaging and false statements, demonstrating a willful and reckless disregard for the truth. (Paper No. 2 at 11). At issue here is the statement that Medibill failed to meet unspecified industry standards. The Court agrees with defendants that whether or not ABC's billing group similarly failed to perform to industry standards is irrelevant to the truth or falsity of the statement made by ABC's consulting group, even under liberal discovery rules. Plaintiffs allege the evidence is relevant to determine the objectivity of ABC's review. Assuming that ABC's objectivity relates to any of the counts in the complaints, it is difficult to understand how ABC's future performance on the ANCO contract would bear on past objectivity.

Next, defendants object to the request for documents "that discuss the amounts paid by ANCO to ABC" - (v). (Paper No. 28-1 at 11). Defendants produced a summary of ANCO's monthly payments to ABC from October 2004 until February 2005 (the date of the document production). (<u>Id.</u>) Defendants protest that producing more information would be unduly burdensome, because ABC would have to produce a large number of documents, since the company is

-27-

paid based on a percentage of the amount billed and collected and moreover, the documents are not relevant to the claim for damages.  (<u>Id.</u>).  Plaintiffs respond that the information produced is insufficient, as the defendants only produced one page showing monthly receipts, that they have been willing to limit the request, to exclude copies of day-to-day patient billing documents, and that defendants have a "state of the art" financial reporting capability.  (Paper No. 30 at 9).  Under Federal Rules of Civil Procedure 26(b)(1), the Court may limit any discovery method if it determines the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from another source that is more convenient, less burdensome, or less expensive."  FED. R. CIV. P. 26(b)(1).  The plaintiffs' request for additional documentation is unreasonably duplicative, because as they have already received the requested information and any further information would be of marginal relevancy.

C. <u>Request for Production No. 7 to Defendant ABC</u>

Plaintiffs ask the Court to order the production of all documents and communications, including but not limited to financial statements, worksheets or balance sheets that reflect any valuation of ABC between January 22 and the present.  (Paper No. 28-1 at 12).  The issue is whether the financial statements are relevant.  Plaintiffs argue the information will assist Medibill in determining or demonstrating the relative value of

ABC's consulting and business services and may support
Plaintiff's contention that ABC deliberately uses consulting and
other services as a loss leader to obtain billing services.
(Paper No. 30 at 11).[13]   Defendants respond that the information
is irrelevant, as there is no viable connection between ABC's
financial condition and plaintiffs' claims for damages.
(Document 28-1 at 14).  The Court agrees with plaintiffs that the
relative worth of ABC's consulting and business services may
reveal evidence establishing defendants' motive to utilize their
consulting services to obtain more lucrative business services.
Thus, the information should be produced.

     D.  <u>Requests for Production No. 8 to Defendant ABC and</u>
        <u>No. 6 to Defendant Locke</u>

     Plaintiffs ask the Court to direct defendants to produce
their tax returns (federal and state with supporting schedules)
prepared or filed on its behalf between January 2002 and the
present.  Plaintiffs only seek the portion of the returns showing
total gross revenues and net taxable income, as the information
is relevant to the defendants' motivation to take ANCO's business
from Medibill, (Paper No. 30 at 9-11) punitive damages and
royalties.  (Paper No. 51 at 4).  In response, defendants state

_____

    [13] Plaintiffs also allege that ABC placed its finances at
issue by making representations about its financial size and
capabilities.  (Paper No. 30 at 11).  However, as the statement
would not be defamatory to the plaintiffs, its truth or accuracy
is not at issue.

that neither ABC nor Locke's financial condition is relevant to the claims or defenses in the litigation.  (Paper 28-1 at 12).  Moreover, sufficient evidence already has been produced, including Locke's employment agreement which details his compensation structure, a billable time chart for ANCO consulting work, and a chart showing the total revenue defendants earned from ANCO.

Even if the defendants have placed their finances at issue, the plaintiffs failed to establish a compelling need for the documents.  Defendants have already introduced evidence sufficient to show the defendants financial motivation to take business away from Medibill, including Locke's employment agreement and ABC's financial records.  Thus, the plaintiffs' motion is denied as to this request.

E. <u>Interrogatory No. 14 to Defendant Locke</u>

Plaintiffs asked Locke to: "identify each anesthesia practice to which Locke provided consulting services that subsequently engaged ABC to provide billing services."  Plaintiffs seek the production of the information as it is "goes directly to the issue of ABC's motive, intent and business practices," (Paper No. 24) and is "relevant to Defendant's knowledge, state of mind, and to the standards and practices used and relied upon by the defendants' in conducting their alleged

"consulting business."  (Paper No. 51 at 4)[14]  Because Locke and
ABC sold their "consulting services" to ANCO based largely on
their claims of experience with other anesthesia practices, they
have placed the veracity and accuracy of the statements and
comparison at issue.  (Paper No. 30 at 13).  The defendants
respond that (1) the only value of the information is to
distract, confuse and mislead the issues in the case, (2)
requiring the parties to fully litigate the subject of
engagements so they are fully understood will strain relationship
of ABC with their customers, and (3) ABC and Mr. Locke have
obligation to keep business and medical information received
highly confidential, both under the Health Insurance Portability
and Accountability Act of 1996 ("HIPAA") and under the contract
negotiated with clients.  (Paper No. 28 at 16-8).

It is well-established that evidence of other wrongs is not
admissible "for the purpose of proving action in conformity
therewith.  FED. R. EVID. 404(A).  However, evidence of other
crimes, wrongs or acts may be admissible for other purposes, such
as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident.  FED. R.
EVID. 404(b).  Here, it is possible that the request may produce

---

[14] At some stage, plaintiffs in their motion to compel sought to
compel the production of all documents in connection with the
transactions. However, neither party has identified the relevant
document request associated with the petition.

sufficient evidence for a court to find that the prior actions
are admissible to show a plan, motive or knowledge.

While defendants allege this information may raise a
distracting side issue leading to a 'case within a case', the
only information presented in support of their position discuss
whether such evidence is _admissible_.  It is not necessary to
decide whether the evidence is admissible before permitting
discovery about the issue.  At the discovery stage, a court
should not by its rulings defend the legal status quo and stifle
creative development of the law by denying plaintiffs access to
facts which _might_ provide a valid basis for recovery under the
law.  While at the same time, a court should not burden a
defendant with a frivolous or harebrained demand for fact
discovery which bears no relation to the pertinent claims or
defenses, the plaintiffs' arguments are not so frivolous as to
deny discovery in this instance.

The alleged confidentiality of the documents does not
preclude discovery into the information.  First, the document
requests do not seek protected health information, such as
individuals' health information.  45 C.F.R. § 160.103 (2005).
Instead, the request is limited to business or financial records
not protected by HIPAA.  45 C.F.R. § 164.306 (2005).  Moreover,
even if the request did encompass patient information, a covered
entity may disclose protected information in the course of any

-32-

judicial proceeding in response to a subpoena, discovery request, or other lawful process, after receiving satisfactory assurances that a qualified protective order is in place.  45 C.F.R. § 164.512(e)(1) (2005).  A confidentiality order is already in place, including a mechanism for defendants to request additional safeguards or protection if necessary.  The confidentiality order also is broad enough to protect documents produced to ABC under a confidentiality agreement.

V.   Conclusion

For the foregoing reasons, defendants' emergency motion to compel and motion for leave to file additional document requests is DENIED, defendants' motion for leave to serve additional document requests and compel response to same is DENIED, defendants' motion to compel plaintiff's answers to interrogatories and response to the first request for production of documents is DENIED in part and GRANTED in part, and the plaintiffs' motion to compel a further response to interrogatories and request for production of documents is DENIED in part and GRANTED in part.

Date: 12/23/05            /s/
                                   Susan K. Gauvey
                                   United States Magistrate Judge